IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DIANE L. DURANT,                )
                                )
          Plaintiff,            )
                                )
v.                              )   Case No. CIV-11-384-KEW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
          Defendant.            )

## OPINION AND ORDER

Plaintiff Diane L. Durant (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 11, 1964 and was 45 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade and failed the GED equivalency test twice. Claimant worked in the past as a hospital cleaner and children's

attendant. Claimant alleges an inability to work beginning June 25, 2007 due to limitations resulting from a back injury, diverticulosis, depression, anxiety, high blood pressure, and pain in her legs and arms.

### Procedural History

On April 21, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 24, 2009, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On November 3, 2009, the ALJ issued an unfavorable decision. On August 30, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical source evidence; (2) failing to pose proper hypothetical questions to the vocational expert; (3) depriving Claimant of her constitutional right to due process; (4) failing to perform a proper credibility assessment; and (5) failing to perform a proper analysis at step 3.

## Evaluation of the Medical Source Evidence

In his decision, the ALJ found Claimant suffered from the severe impairments of the back, depression, and anxiety. He determined Claimant retained the RFC to perform light work except that she could occasionally climb stairs and ladders, balance and stoop, and could frequently kneel, crouch, and crawl. Additionally, the ALJ found that due to psychologically based factors, Claimant was limited to simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, but could not relate to the general public. He also found Claimant could adapt to a work situation. (Tr. 18). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform the representative jobs of cleaner/housekeeper or maid, which was determined to be unskilled requiring a light exertional level. (Tr. 27).

5

Claimant first contends the ALJ improperly assessed the various medical opinions in the record. The ALJ specifically afforded "great weight to the opinions of the consultative examiner, Dr. Ward as well as to Dr. Wright and Dr. Pettigrew." (Tr. 26). He also gave "great weight" to the opinions of radiologists, Dr. Webb and Dr. Li. He states he gave "some weight" to the State medical and psychological experts. Id. The ALJ stated he "gave weight" to Dr. Khetpal, Claimant's primary care physician but noted he was neither a mental health specialist nor a specialist in either neurology or orthopedics. He considered the opinion of Dr. Smithers of Texoma Neurology but found she lacked the "professional credentials" to qualify her as a health provider or an acceptable medical source. Id.

Claimant cites the findings by Dr. Ward and Dr. Wright but does not state with specificity how the ALJ's decision is deficient in its evaluation of the opinions. On June 20, 2008, Dr. Kathleen Ward determined in a Mental Status Examination that Claimant presented "a fairly low level of cognitive functioning, but whether this is due (sic)developmental delay or effects of MVA trauma (1979), it does not appear to hamper her ability to work as she has in the past. She does present with some adjustment-related depression, as well, and may benefit for supportive therapy." She also found Claimant's intellectual abilities were estimated to be

within the lower to borderline ranges. (Tr. 507). Nothing in the ALJ's evaluation of this opinion is deficient.

On January 30, 2008, Dr. Michael Wright diagnosed Claimant with a low back strain and disk bulge at L5-S1. He released Claimant to work with permanent restrictions of no lifting more than 20 pounds, no pushing or pulling more than 20 pounds, and only occasional bending and stooping. (Tr. 475-76). The ALJ accurately cited the relevant findings in this report in his decision. (Tr. 21). Nothing in the ALJ's RFC findings indicates he failed to properly consider this report.

The use of the opinion of Dr. Pettigrew is somewhat troubling. The report does not appear in the medical record. Rather, the opinion only appears in a medical summary authored by Sally Phillips, a Vocational Rehabilitation Specialist. It is one small paragraph in length. (Tr. 515-20). To give "great weight" to a report that is only summarily presented secondhand and which cannot be evaluated for its medical bases is error. On remand, the ALJ should obtain Dr. Pettigrew's report or reconsider affording it such weight.

Claimant also states the ALJ committed error when he characterized the treatment by her physician, Dr. Vivek Khetpal as consisting "of medication management without referral to any orthopedic or neurological specialists." Claimant contends Dr.

7

Khetpal referred Claimant to a neurologist on two occasions. Claimant fails to accurately quote the ALJ's finding which is actually "[t]here are also records demonstrating the claimant's routine visits with Dr. Khetpal whose treatment regimen appeared to consist of medication management without referral to any orthopedic or neurological specialists . . . **until December 2008**." (Tr. 20)(emphasis added by this Court). This finding is accurate and not erroneous.

Next in the litany of issues raised by Claimant is her allegation that the ALJ erred in failing to afford the opinion of Bonnie Smithers, a nurse practitioner. Nurse Smithers evaluated Claimant in December of 2008. Her assessment while at Texoma Neurology Associates is detailed and thorough on its face. (Tr. 625-28). The ALJ does not explain how Nurse Smithers' credentials are deficient.

Even if the ALJ's assessment of Nurse Smithers is correct - that she is not an "acceptable medical source" - he should have considered her status as an "other source." As such, Nurse Smithers' opinions are considered under the precepts of Soc. Sec. R. 06-03p, which states:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our

8

regulations . . ., "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions."

On remand, the ALJ shall evaluate whether Nurse Smithers' opinions are entitled to status as an "other source" or explain the basis for rejecting her opinions based upon insufficient "credentials."

The ALJ's assessment of the opinions of Drs. Rosson and Harrison is curious. The ALJ found with regard to their opinions as follows:

> The undersigned also notes that the claimant underwent examinations by Dr. Rosson and Dr. Harrison not in attempts to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Although such evidence is certainly legitimate and deserves due considerations, the context in which it was produced must also be considered. The undersigned gave weight to the opinions of Dr. Rosson and Dr. Harrison where their opinions were consistent with the medical evidence as a whole.

(Tr. 26).

Dr. James Harrison, a Clinical Psychologist, performed a psychological evaluation of Claimant at an attorney's behest. He administered extensive psychological testing of Claimant. He diagnosed Claimant with Major Depressive Disorder, Moderate, Anxiety Disorder, NOS, Somatoform Disorder, NOS, Dependent Personality Traits, Reported hypertension, left facial drooping, ruptured vertebral disks, back pain, memory and attention problems, inability to work due to physical and psychological disabilities, financial/economic difficulties, possible limited access to healthcare. Dr. Harrison assessed Claimant's GAF at 48. (Tr. 744-53).

On Dr. Harrison's assessment form, he found Claimant had moderate difficulties in understanding and remembering short, simple instructions, carrying out short, simple instructions, understanding and remembering detailed instructions, and the ability to interact appropriately with supervisors. He also found she had marked limitations in carrying out detailed instructions, in the ability to make judgments on simple work-related decisions, the ability to interact appropriately with the public and coworkers, the ability to respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. He answered affirmatively as to whether Claimant's psychiatric disorder would result in functional limitations. (Tr. 755-57).

10

This Court is unsure which portions of Dr. Harrison's report were accepted and given some weight and which were not, as the ALJ did not specify or explain his assessment of the opinion. He must do so for a proper evaluation. Further, the ALJ's statement that the opinions were accepted and given weight "where their opinions were consistent with the medical evidence as a whole" is meaningless as the Court cannot evaluate what portions of the opinions the ALJ considered consistent with the other medical evidence and which he did not. On remand, the ALJ shall explain his decision with regard to the opinions of these medical professionals.

### Hypothetical Questioning of the Vocational Expert

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489.

Until the ALJ properly accounts for all of the medical opinions in the record, the questioning of the vocational expert cannot be said to reflect all of Claimant's limitations. On remand, the ALJ shall modify his hypothetical questions to reflect any and all limitations supported by the medical record and the opinions of the medical professionals.

### Due Process Violation

Claimant contends the ALJ violated her due process rights by relying upon Dr. Pettigrew's records without obtaining them. While this Court is dubious that this omission constitutes a due process violation, the ALJ is required to obtain and evaluate Dr. Pettigrew's records and opinions.

### Credibility Assessment

In light of the many deficiencies in the ALJ's analysis of the medical opinion evidence, it is impossible for him to have properly assessed the credibility of Claimant's subjective complaints as being contradicted by the medical record. On remand, the ALJ shall reassess Claimant's credibility once the medical opinion evidence is properly considered and weighed.

### Step Three Analysis

Claimant contends the ALJ should have considered whether she met Listing § 12.05 due to her limited IQ and significant back impairment. She also contends the ALJ failed to properly consider the combined effects of her obesity at step three.

The ALJ properly considered Claimant's obesity in his opinion at step two which would carry into his step three analysis. (Tr. 15). No error is found in this regard. On remand, however, the ALJ shall reassess the applicability of Listing § 12.05. While Defendant makes an *ad hoc* justification for not considering this Listing, the ALJ did not include the same reasoning in his decision.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 22nd day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE